STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-99-84

DHM - KEN -4 | z | 2000

PEOPLES HERITAGE SAVINGS BANK,

     Plaintiff/Appellee

  v.

HARRISON F. ALDRICH, JR.,

     Defendant/Appellant

DECISION AND ORDER

This matter is before the court upon appellant's M.R. Civ. P. 76D appeal of disclosure hearing ordered in the District Court on September 15, 1999. The disclosure proceeding was brought pursuant to a writ of execution issued in favor of plaintiff on July 6, 1999, in the amount of $7,181.40 plus cost of the writ. Both parties were represented by counsel at the disclosure proceeding. After hearing, the court ordered the appellant to pay the appellee $300 per week commencing October 1, 1999. The court made a specific finding that: "The Court does not find that mortgage payments and other apartment-related expenses constitute 'amount required by law to be withheld' as described at 14 M.R.S.A. § 3121(2)."

Appellant then filed his appeal arguing that the District Court erred in failing to consider his business debts in calculating his ability to make payments on the judgment. He contends that section 3121(2) requires the court to take into consideration "legitimate business debts" in calculating disposal income. He argues that the uncontested record shows that he does not have the ability to make payments on the debt and that the court's finding to the contrary constituted a

factual error not supported by the record. Specifically, he asserts that he has monthly income of approximately $8,400 and monthly expenses of $10,854. He asserts that his monthly expenses represent his "lawful debts" which includes his business debts, his personal expenses, and tax obligations to the State of Maine. Because his "lawful debts" exceed his income, he argues that he has no ability to make payments on the judgment and the District Court's decision to the contrary should be reversed.

Title 14, section 3127 of the Maine code provides a method for calculating a debtor's ability to make installment payments on a judgment debt. This provision states in relevant part:

> **1. Court order.** Upon a disclosure hearing when it is shown that the judgment debtor is receiving or will receive money or earnings from a source other than a source which is otherwise exempt from attachment and execution under sections 4421 to 4426, the court may order that the judgment debtor make specified installment payments to the judgment creditor; provided that, in the case of a judgment debtor who is an individual, the maximum amount of earnings for any work week which is subject to such an installment order may not exceed, . . . :
>
> > **A.** Twenty-five percent of the judgment debtor's disposable earnings for that week; or
> >
> > **B.** The amount by which his disposable earnings for that week exceed 40 times the federal minimum hourly wage prescribed by the United States Code, Title 29, Section 206(a)(1), whichever is less.

Under this statute, the district court must first find that the debtor has income from a source which is not exempt from attachment. In the instant case, Aldrich testified that his monthly income from his rental properties is $8,004.00. Transcript at 9, lines 3-5 (hereinafter T. at __, L. __). He does not have income from any other

2

source. T. at 10, L. 6-18. The district court never made an express ruling at the hearing or in the order finding that any of this income is exempt under 14 M.R.S.A. §§ 4421-4426. Additionally, Aldrich does not argue on appeal that the trial court failed to exclude income generated from a source which is exempt under those provisions. Consequently, it appears that Aldrich has $8,004.00 per month of income from a source which is not exempt from attachment. This translates into a weekly income of approximately $1,861.40.

Next, section 3127(1) provides that the installment order may not exceed the lesser of (1) 25% of the debtor's *disposable earnings* per week or (2) the amount by which the debtor's *disposable earnings* exceed 40 times the federal minimum hourly wage. Disposable earnings is defined by the statute as "that part of the earnings of any judgment debtor remaining after the deduction from those earnings of any amounts required by law to be withheld." 14 M.R.S.A. § 3121(2) (1980). Aldrich argues that "amounts required by law to be withheld" includes a debtor's "lawful debts" which includes his business debts that the court expressly refused to consider. *See* Order (stating that Aldrich's "mortgage payments and other apartment related expenses" did not "constitute 'amounts required by law to be withheld' as described at 14 M.R.S.A. § 3121(2).").

There is no Maine case law interpreting the phrase "amounts required by law to be withheld" in section 3121(2). When a court interprets a statute, it must first look to the plain meaning of the statutory language to give effect to legislative intent. *Cook v. Lisbon School Committee*, 682 A.2d 672, 676 (Me. 1996). If the

3

meaning of the statute is clear on its face, then the language of the statute must be given effect. *Id.* "[W]hen the meaning of the statute is clear, there is no need to look beyond the words, unless the result is illogical or absurd." *Estate of Spear*, 1997 ME 15, ¶ 7, 689 A.2d 590, 592. When the language of a statute is ambiguous, the court should "look beyond the words of the statute to its history, the policy behind it, and other extrinsic aids to determine legislative intent." *Arsenault v. Crossman*, 1997 ME 92, ¶ 7, 696 A.2d 418, 421 (citing *State v. Fournier*, 617 A.2d 998, 1000 (Me. 1992)). In interpreting a statute, the court is to "remain mindful of the whole statutory scheme, of which the section at issue forms a part, so that a harmonious result may be achieved." *Daniels v. Tew Mac Aero Services, Inc.*, 675 A.2d 984, 987 (Me. 1996). Additionally, "[s]tatutory language should be construed to avoid absurd, illogical or inconsistent results." *Fleet Bank of Maine v. Griffin*, 1997 ME 45, ¶ 8, 690 A.2d 981, 983 (Me. 1997).

The plain language of the definition of disposable earnings in section 3121(2) does not support Aldrich's interpretation of "amounts required by law to be withheld." As noted earlier, disposable earnings is defined as "that part of the earnings of any judgment debtor remaining after the deduction from those earnings of any amounts required by law to be withheld." 14 M.R.S.A. § 3121(2). "Earnings" is defined by the statute as "compensation paid or payable for personal services." *Id.* § 3121(1). Read together, disposable earnings is that part of a debtor's compensation for services remaining after any amounts required by law are withheld. *Black's Law Dictionary* defines "withhold" as "retain[ing] in one's possession that which belongs

4

to or is claimed or sought by another . . . To refrain from paying that which is due."

*Black's Law Dictionary* 1602 (6th ed. 1990). Thus, disposable earnings is money earned by the debtor for his services minus money required by law not to be paid to the debtor by his employer - the party doing the withholding. An employer is required to withhold from an employee's earnings things such as income tax, FICA, and social security - not payments on a debtor's lawful debts.[1] Stated another way, "withheld" means to not pay that which is due. Aldrich's argument that "amounts required by law to be withheld" means lawful debts makes no sense because lawful debts are not things which are going to be "withheld," but rather they are things that are going to be paid. If the Legislature intended disposable earnings to include consideration of lawful debts, they would have defined disposable earnings as that part of earnings remaining after the deduction of amounts required by law to be paid.

Any ambiguity in the meaning of disposable earnings is cleared up by the statute's legislative history. In the Statement of Fact included with the bill creating a new system for the enforcement of money judgments and adopting the definition of

---

[1] Several courts interpreting the phrase "amounts required by law to be withheld" in their definition of disposable earnings have reached this same conclusion. *See Olsen v. Townsend*, 530 A.2d 566, 568 (Vt. 1987) ("It is common knowledge that earnings which are required by law to be withheld typically include such items as federal and state income taxes, social security withholdings, and disability insurance."); *Aetna Casualty & Surety Co. v. Rodco Autobody*, 965 F.Supp 104, 108 n.7 (D.Mass. 1996) ("The term disposable earnings consists of the earnings of an individual which remain 'after the deduction from those earnings of any amounts required by law to be withheld,' . . . and therefore excludes deductions for social security and withholding taxes."); *In re Pruss*, 235 B.R. 430, 435 (B.A.P. 8th Cir. 1999) ("Disposable earnings under the statute are those 'earnings' left after deducting amounts required to be withheld . . . this provision protects the employee by subjecting to garnishment only the net portion of his income after payment of taxes, social security and other mandatory withholding.").

5

disposable earnings, the Legislature stated that "[t]he basic philosophy of the proposed legislation is . . . that *liability for a money judgment should be determined with reference to a judgment debtor's ability to pay from earnings* rather than to his ownership of certain tangible assets." L.D. 1137, Statement of Fact (105th Legis. 1971) (emphasis added) (attached). Thus, the focus is on the debtor's earnings and not on his debts.

Finally, Aldrich's interpretation of this language as including all lawful debts owed by a debtor is inconsistent with the provisions in 14 M.R.S.A. § 3127-B (Supp. 1999). This section provides a mechanism whereby a judgment creditor can seek an order from the court requiring the debtor's employer to withhold the installment payments from the debtor's earnings. Upon receiving this order, the employer is required to provide "an answer under oath listing the dollar amounts of all earnings owed or payable to the debtor and *the calculation of the judgment debtor's disposable earnings.*" *Id.* § 3127-B(1). The section goes on to state that "*[t]he employer or other payor* served with the order *shall calculate the maximum dollar amount of the employee's disposable earnings* which may be applied to the debt under section 3127 by using the form answer attached to the order." *Id.* § 3127-B(2). The meaning of the phrase "amounts required by law to be withheld" in the disposable earnings definition, when read in conjunction with the entire disclosure statute, is clear. It means those amounts which are required to be withheld from the debtor's paycheck before he receives his pay. It does not and cannot mean all of his debts that he is obligated to pay. If it did, then there is no way an employer could

6

ever comply with the mandate in section 3127-B that he calculate the amount of disposable earnings available for payment because an employer does not have access to information about their employees' debts. The plain language of the statute, its legislative history, and the entire statutory scheme for disclosure proceedings support the conclusion that "amounts required by law to be withheld" does not include lawful debts as argued by Aldrich.

Aldrich argues in his reply brief that if this court finds that the statutory definition of disposable earnings does not include deduction of his lawful debts, then the statute is an unconstitutional state interference with a contract in violation of Article I, § 10 of the United States Constitution.[2] Specifically, he argues that the trial court entered an order in this case requiring him to make payments "even though that meant that 'mortgages and other apartment related debt' must go unpaid." Reply Memo at 4. He also argues that the "[t]his effective judicial compulsion to default on a note or mortgage also constitutes a due process violation, because it was issued without notice to the other contracting parties."[3] Reply Memo at 4-5. He then argues that because a statute must be interpreted in such a manner as to not render it unconstitutional, the trial court's order was in

---

[2] This provision of the federal Constitution provides in relevant part that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . : . ."

[3] To the extent that Aldrich is trying to challenge the statute as violating the constitutional rights of third parties not named in this action, he cannot do so. *See Common Cause v. State*, 455 A.2d 1, 6 (Me. 1983) ("The general rule is that a litigant may not assert the constitutional rights of third parties.").

error and must be reversed. Aldrich did not raise this argument in his initial brief and so the Bank has provided no response to this issue.

However, this argument is without merit. The District Court only ordered Aldrich to make a $300 monthly payment to satisfy his judgment debt. It did not order him to stop payments on his mortgages and other apartment-related debts in order to pay the $300. Based upon the evidence presented, he could take leave of absence from his attendance at law school (per month: $1,250 in tuition, $200 in books and fees, and $500 rent in New York), or address his food expenses of $450 a month in order to comply with the court's order. If he did this, he might still pay his mortgages and apartment-related expenses and there would be no interference with his "contracts." In addition, Aldrich has other expenses which are subject to further limitation. The court's order does not require the appellant to default on his mortgages, it only requires him to reallocate his monthly income to meet his legal obligations.

In sum, 14 M.R.S.A. § 3121(2) requires the court to consider the "disposal earnings" of the debtor. Generally, this definition follows that commonly called "take-home pay." To the extent there could be concern that certain lawful debts could constitute obligations affecting the appellant's ability to generate income, the court notes 14 M.R.S.A. § 3128 which allows the disclosure court to consider ". . . any other factors and circumstances which the court shall deem material and relevant."

8

The entry will be:

Appellant's appeal is DENIED; the decision of the disclosure court is AFFIRMED; matter REMANDED to the District Court.

Dated: April_2_, 2000

Donald H. Marden
Justice, Superior Court

9

Date Filed __11/18/99__ __Kennebec__ Docket No. __AP99-84__
County

Action __Appeal from District Court__ ~~DONALD E. * * IGHT~~ **J. MARDEN**
Money Judgment ~~Law Li...~~

**MAY 4 2000**

Peoples' Heritage Savings Bank · vs. Harrison F. Aldrich, Jr.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Paula R. Watson, Esq.<br>120 Exchange Street<br>P.O. Box 447<br>Portland, Maine 04112-0447 | Samuel M. Sherry, Esq.<br>Metropolitan Legal Center, P.A.<br>P.O. Box 18201<br>Portland, Maine 04112 |

| Date of Entry | |
|---|---|
| 11/19/99 | Appeal from Northern Kennebec District Court with all papers, filed. |
| 11/22/99 | Notice of briefing schedule mailed to attys of record. |
| 12/27/99 | Brief for Appellant, filed. s/Sherry, Esq. |
| 1/24/00 | Brief for Appellee, filed. s/Watson, Esq. |
| 2/4/00 | Appellant's Reply Brief, filed. s/Sherry, Esq. |
| 3/9/00 | Oral arguments heard with Justice Marden presiding, Atty Watson and Atty Sherry present.<br>Court takes underadvisement |
| 4/7/00 | DECISION AND ORDER, Marden, J.<br>    Appellant's appeal is DENIED; the decision of the disclosure court is AFFIRMED; matter REMANDED to the District Court.<br>Copies mailed to attys of record.<br>Copies mailed to Deborah Firestone, Garbrecht Law Library and Goss. |